UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

CASE NO.: 21-13245

FLORIDA DEPARTMENT OF JUVENILE JUSTICE,

Appellant,

v.

LAWANA TYNES,

Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT SOUTHERN DISTRICT OF FLORIDA

**REPLY BRIEF OF APPELLANT**

Respectfully submitted,
Carri S. Leininger, Esq.
Florida Bar No.: 0181022
Jayme S. Sellards, Esq.
Florida Bar No.: 60066
Williams, Leininger & Cosby, P.A.
11300 US Highway One, Suite 300
North Palm Beach, FL 33408
Telephone No.: (561)615-5666
Facsimile: (561)615-9606
Counsel for Appellant

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Appellant, Florida Department of Juvenile Justice, respectfully submits the following Certificate of Interested Persons and Corporate Disclosure Statement:

## CERTIFICATE OF INTERESTED PERSONS

Dimitrouleas, William, United States District Court Judge

Florida Department of Juvenile Justice (Stock Ticker: none)

Leininger, Carri S., Esq.

Miller, Glenn, Esq.

Sellards, Jayme, Esq.

Snow, Lurana, United States District Court Magistrate Judge

Tynes, Lawanna

Williams, James, O., Jr., Esq.

Wiseberg, Philip, Esq.

Williams, Leininger & Cosby, P.A.

i

## CORPORATE DISCLOSURE AND CERTIFICATION

Florida Department of Juvenile Justice is a state agency of Florida. As a result, no publicly traded company or corporation has an interest in the outcome of the case or appeal.

## TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ........................................................ i

CORPORATE DISCLOSURE AND CERTIFICATION ........................................ ii

TABLE OF CONTENTS ............................................................................................ iii

TABLE OF AUTHORITIES ..................................................................................... iv

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ............................................................................................................... 3

I. PLAINTIFF   FAILED   TO   PROVE   SHE   WAS   INTENTIONALLY
DISCRMINATED AGAINST BASED UPON HER RACE OR SEX ................... 3

A. The   Court   Should   Not   Act   as   Super-Personnel   Department
............................................................................................................................... 3

B. Plaintiff Failed to Show Indirect Evidence of Intentional Discrimination under
*McDonnell Douglas* ................................................................................................ 7

C. Plaintiff Failed to Present a "Convincing Mosaic" of Circumstantial Evidence
Showing Intentional Discrimination Against Plaintiff Based on Race or Sex ......... 8

II. PLAINTIFF   FAILED   TO   PROPERLY   PLEAD   OR PROVE A   §1981
CLAIM ...................................................................................................................... 15

CERTIFICATE OF COMPLIANCE WITH FONT STANDARD ......................... 19

CERTIFICATE OF SERVICE ................................................................................. 19

# TABLE OF AUTHORITIES

*Blash v. City of Hawkinsville,*
856 Fed. Appx. 259 (11th Cir. 2021) .................................... 7

*Chapman v. AI Transp.,*
229 F. 3d 1012, 1030 (11th Cir. 2020) .................................. 3

*Kim v. Nasa Finch Co,*
123 F. 3d 1046 (8th Cir. 1997) ............................................ 16

*Jenkins v. Nell,*
26 F. 4th 1243 (11th Cir. 2022) .......................................... 14

*Lewis v. City of Union City, Georgia,*
918 F. 3d 1213, 1222 (11th Cir. 2019) .................................. 7,12,14,15

*Luke v. University Health Services, Inc.,*
842 Fed. Appx. 503 (11th Cir. 2021) ................................... 7

*McGinnis v. Ingram Equip. Co., Inc.,*
918 F. 2d 1491, 1495 (11th Cir. 1990) ................................. 9

*Singleton v. Wulff,*
428 U.S. 106, 120 (1976) .................................................... 9

*Smith v. Lockheed0Martin Corp.,*
644 F. 3d 1321 (11th Cir. 2011) .......................................... 10

*Ward v. Troup County School District,*
856 Fed. Appx. 225, 227 (11th Cir. 2021) ........................... 3,8

**Statutes**
42 U.S.C. §1981 .................................................................. 2,7,15,16,17

42 U.S.C. §2000e - 2(a)
(Title VII) ........................................................................... 2,7,15,16,17

## PRELIMINARY STATEMENT

This appeal arises out of an employment discrimination case filed by the Plaintiff, Lawanna Tynes.  The Defendant is the Florida Department of Juvenile Justice ("FDJJ").    At the time of her termination, the Plaintiff was employed as a superintendent at the Broward Juvenile Detention Facility.  The FDJJ fired the Plaintiff after an unheard of fifteen (15) codes for officer assistance were called in a single day at the Broward Juvenile Detention Center.  The Plaintiff claims the termination was due to race or sex discrimination.

FDJJ will be referred to as FDJJ or the Defendant.

The Appellee will be referred to as "Plaintiff" or Ms. Tynes.

References to the Record will be by Docket Entry number in the District Court followed by the page number, except the Trial Transcript.

The Trial Transcript is not numbered consecutively.  The numbering starts at 1 at the beginning of each day.  The trial lasted six (6) days.  The references to the transcript will be by day and page number, i.e. [TT. 3-121]

References to the Appendix will be by the DE number or PDF number [App. ]

1

## SUMMARY OF THE ARGUMENT

Florida Department of Juvenile Justice's Initial Brief identified two ways in which the District Court erred in failing to grant its Rule 50 Motion for Judgment as a Matter of Law. First, the Plaintiff failed to show at trial that her two proposed comparators were valid, which is required to prove a circumstantial case for race or sex discrimination under Title VII and 42 U.S.C. §1981. Second, Plaintiff failed to properly plead a cause of action for a violation of 42 U.S.C. §1981 or prove it at trial.

Rather than providing a substantive response to Defendant's comparator argument, Plaintiff instead asserts in her Answer Brief that she proved race or sex discrimination at trial by presenting a "convincing mosaic" of circumstantial evidence. However, Plaintiff never argued the "convincing mosaic" theory in the trial court, so she cannot now make it for the first time on appeal. Alternatively, even if she could make such an argument, there is absolutely no evidence in the record showing any intentional discrimination against the Plaintiff based upon race or sex, so she did not present a "convincing mosaic" of intentional discrimination at trial.

Additionally, Plaintiff completely fails to acknowledge that she did not plead a claim of race discrimination under 42 U.S.C. §1981. Defendant was not advised

2

until the first day of trial itself that the Plaintiff intended to pursue such a claim and was prejudiced as a result. Furthermore, the lack of evidence supporting an allegation that the FDJJ intentionally discriminated against Plaintiff based upon her race precludes a reasonable jury from finding that "but for" her race, Plaintiff would not have been fired.

## ARGUMENT

## I.    PLAINTIFF FAILED TO PROVE SHE WAS INTENTIONALLY DISCRMINATED AGAINST BASED UPON HER RACE OR SEX

### A.    The Court Should Not Act as Super-Personnel Department

#### 1.    The Court's sole concern is whether Plaintiff was intentionally discriminated against due to race or sex.

The sole concern in a Title VII civil action is whether the employer engaged in intentional discrimination against a plaintiff based upon their race or sex, not whether the plaintiff was a good employee. *See Ward v. Troup County School District*, 856 Fed. Appx. 225, 227 (11th Cir. 2021). As such, "federal courts do not sit as a super-personnel department that reexamines an entity's business decisions." *Chapman v. AI Transp.*, 229 F. 3d 1012, 1030 (11th Cir. 2020). Indeed, "an employer may fire an employee for a good reason, a bad reason, a reason based on erroneous

facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Ward*, 856 Fed. Appx. at 227.

This appeal arises out of FDJJ's decision to terminate the superintendent of a large juvenile detention facility following an unprecedented event where fifteen (15) codes were called in a single day indicating a level of disorder that jeopardized the health and safety of the youth and staff. The Plaintiff was the superintendent and the person ultimately responsible for the facility.

In her Answer Brief, the Plaintiff does not focus on discussing any actual race or sex discrimination against her. Rather, the Plaintiff's main argument appears to be twofold. First, that Plaintiff was a good employee with a long work history with the FDJJ. Second, that Dixie Fosler was a bad person with a "venomous mind" who should not have fired a good employee like the Plaintiff. [AB, p. 29] The Plaintiff focuses on the theme of how unfair it was that a good employee got fired because she presented absolutely no evidence that the FDJJ intentionally discriminated against her because of her race or sex.

> **2.    There is no evidence that intentional race or sex discrimination was a motivating factor in Plaintiff's termination.**

The Plaintiff makes it clear in her Answer Brief that the totality of her "evidence" that she was intentionally discriminated against by the FDJJ was her

4

"feeling" that she was treated differently because of her race and gender. [TT. 3:29]
Plaintiff provides no direct evidence of intentional discrimination and, as Defendant
shows in its Initial Brief and *infra*, no indirect evidence of intentional discrimination.
The only supposed corroborating evidence to her "feeling" that there was a
discriminatory component to her firing is a single comment made by a co-worker,
Daryl Wolf, who was not a supervisor of Plaintiff's or a decision-maker in Plaintiff's
firing, but rather a proposed comparator. Furthermore, this single comment was not
directed to the Plaintiff, was not made in her presence, and was misconstrued and
taken completely out of context by Plaintiff.

The record shows that in 2013 (two years before the Plaintiff's termination),
Ms. Wolf was a supervisor at a juvenile detention facility. [TT. 5:90] In April of
that year, a juvenile made a "rather inappropriate" comment. *Id.* After resolving the
incident, Ms. Wolf went to a quality review meeting and explained what the youth
had said. *Id.* Someone at the meeting took offense and reported Ms. Wolf for
repeating the offensive comment. *Id.* She received a verbal reprimand. *Id.* Again,
this was not a spontaneous comment that Ms. Wolf made of her own initiative in
casual conversation, but rather a report of a comment that was made to her by a
juvenile while she was performing her official duties.

5

The Plaintiff takes this one incident and states twice in her Answer Brief that Wolf "uttered racial comments" and that Ms. Fosler was prejudiced because "she would not touch" others "that make racial comments." [AB, p. 29] These are completely erroneous statements. First of all, it was one comment, not multiple comments. Second, it was not a comment initiated by Ms. Wolf, but a comment made to Ms. Wolf by a juvenile. Third, the incident occurred before Ms. Fosler became Assistant Secretary, so Ms. Fosler could not have disciplined or "touched" Ms. Wolf because of it. [TT. 6:32] Fourth, Ms. Wolf was reprimanded for her comment by FDJJ. [TT. 6:62] Fifth, the reprimand took place in April of 2013, and Plaintiff was terminated in December of 2015, so there is no temporal relevance.

This single incident is clearly not evidence of intentional discrimination against the Plaintiff based upon her race or sex, and there is certainly no causal link between this unconnected event and Plaintiff's termination. Consequently, Plaintiff is improperly attempting to entice the federal courts to act as a super-personnel department for the FDJJ and conclude that the FDJJ terminated the Plaintiff for a bad reason, not a discriminatory one.

**B.    Plaintiff Failed to Show Indirect Evidence of Intentional Discrimination under *McDonnell Douglas***

Where no direct evidence of race or sex discrimination exists, plaintiffs may attempt to prove their Title VII or §1981 case by presenting some form of circumstantial evidence.  Specifically, under the last element of the *McDonnell Douglas* framework, which is the only element of relevance in the instant lawsuit, "a plaintiff must show by a preponderance of the evidence that she, *inter alia*, was treated less favorably than similarly situated employees outside her protected class." *Lewis v. City of Union City, Georgia*, 918 F. 3d 1213, 1222 (11th Cir. 2019).  This is proven by a plaintiff presenting comparators who are "similarly situated in all material respects." *Lewis*, 918 F. 3d at 1226.  Crucially, this means that a similarly situated comparator "Will have engaged in the same basic conduct (or misconduct) as the Plaintiff."  *Id.* at 1227.

In its Initial Brief, the FDJJ did a careful, in-depth analysis of Eleventh Circuit case law concerning its strict construction of the term "same basic conduct." Namely, that this Court has held that worse conduct is not "same basic conduct" and that some same conduct is not "same basic conduct."  *See Blash v. City of Hawkinsville*, 856 Fed. Appx. 259 (11th Cir. 2021); and *Luke v. University Health Services, Inc.*, 842 Fed. Appx. 503 (11th Cir. 2021).  In other words, "same basic

7

conduct" means "same basic conduct." *See Ward v. Troup County School Dist.*, 856 Fed. Appx. 225 (11th Cir. 2021). The FDJJ highlighted the fact that the Plaintiff's two proposed comparators had clearly not engaged in the same basic conduct as the Plaintiff and, as such, were not proper comparators under Eleventh Circuit precedent.

In her Answer Brief, the Plaintiff completely fails to address the "same basic conduct" cases the FDJJ cited in its Initial Brief. She does not distinguish them or analyze them at all. Plaintiff simply ignores those cases, as she largely does with the comparator issue as a whole. Her only response is to quote – at considerable length – the trial court's summary judgment ruling, which likewise ignored Eleventh Circuit case law holding that a comparator must have engaged in the "same basic conduct" as a plaintiff in order to be valid. [AB, p. 30-31] As such, Plaintiff failed to rebut Defendant's argument that Plaintiff's comparators were not valid as a matter of law.

### C. Plaintiff Failed to Present a "Convincing Mosaic" of Circumstantial Evidence Showing Intentional Discrimination Against Plaintiff Based on Race or Sex

Instead of addressing the lack of valid comparators, the bulk of Plaintiff's Answer Brief is spent making a brand-new argument on appeal. She asserts that

8

even though she cannot prove race or sex discrimination directly or indirectly through the *McDonnell Douglas* framework, there is somehow a "convincing mosaic" of circumstantial evidence showing that the FDJJ intentionally discriminated against her based upon her race or sex. [AB, p. 28] The problem is that there is not only no "convincing mosaic" of circumstantial evidence, indeed there is no evidence whatsoever that Plaintiff was discriminated against based upon her race or sex.

### 1. Plaintiff waived the "convincing mosaic" theory of liability by not arguing it in the trial court

As an initial matter, Plaintiff waived her ability to raise the "convincing mosaic" argument on appeal, as it was never argued by Plaintiff during the prosecution of her case. *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("It is the general rule … that a federal appellate court does not consider an issue not passed upon below"). *See also McGinnis v. Ingram Equip. Co., Inc.*, 918 F. 2d 1491, 1495 (11th Cir. 1990) ("A general principle of appellate review is that an appellate court will not consider issues not presented to the trial court. Judicial economy is served and prejudice avoided by binding the parties to the theories argued below"). A close look at the record reveals that the phrase "convincing mosaic" was not referenced in Plaintiff's opening statement, in her closing argument, or at any other point during

9

the trial or in post-trial motions or responses.  Additionally, it was not mentioned in the jury instructions, the verdict form, or considered by the jury in any other way.

Indeed, the only references to that phrase during the entirety of the case were in Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment and in the Joint Pretrial Stipulation.  However, they were simply one-sentence references.  The "convincing mosaic" theory was never actually argued or pursued by the Plaintiff at any stage of the case prior to appeal.  Since this theory was not argued or pursued below, Plaintiff may not now argue it for the first time on appeal.

### 2. Alternatively, Plaintiff did not establish a "convincing mosaic" of intentional race or sex discrimination

#### a. *Smith v. Lockheed* distinguished

The case that established the "convincing mosaic" standard in the Eleventh Circuit was *Smith v. Lockheed-Martin Corp.*, 644 F. 3d 1321 (11th Cir. 2011).  The facts of *Lockheed-Martin* were set against the backdrop of a workplace tragedy.  In 2003, a Lockheed employee – who was a white supremacist – opened fire at a Lockheed plant in Mississippi, killing five and wounding eight.  *Id.* at 1329.  In the wake of the shooting, Lockheed was widely accused by the survivors, the EEOC, and the national media for allowing racial hostility to fester at the company.  *Id.* at

10

1330. Lockheed then instituted a "zero tolerance" anti-harassment policy that banned the transmission of racial or ethnic slurs. *Id.* at 1323.

In 2005, Mitten, who was a white male supervisor at Lockheed, received an email of a racial "joke" about the lack of black NASCAR drivers. *Id.* at 1324. Mitten forwarded this email to a fellow employee. Lockheed's HR department found out about the email and identified eight employees, including Mitten, who had seen or forwarded the NASCAR email. *Id.* at 1336. Seven were white. Mitten, along with the other white employees, were terminated. *Id.* The one black employee identified was merely reprimanded. *Id.*

Later that year, another racially-themed email – this one targeting white people – began circulating at Lockheed. *Id.* at 1338. Black employees who were caught circulating the email were suspended. *Id.* at 1339. However, two white employees were terminated for transmitting the same item. *Id.* at 1340.

The Eleventh Circuit held that even without a valid comparator, as Mitten was the only supervisor involved, a jury could find from circumstantial evidence in the record that Lockheed discharged him because of his race. *Id.* at 1346-1347. It held that there was a "convincing mosaic" of circumstantial evidence of intentional race and sex discrimination against Mitten because the evidence: (1) suggested that Lockheed's justification for firing Mitten was a pretext for racial animus; (2) showed

11

that Lockheed had a substantial incentive to discipline white employees more harshly than black employees in the wake of the workplace shooting; and (3) indicated that Lockheed consciously injected race considerations into its decision-making. *Id.* at 1341.

The instant matter is completely distinguishable from the *Lockheed* case. First, the Plaintiff did not identify anyone who engaged in the same exact conduct she did and received different punishment. Second, the Plaintiff has made no showing that the FDJJ had an incentive to discipline employees more harshly based on race or sex. Finally, there is no evidence that the FDJJ consciously injected race or sex into its decision-making.

### b.    *Lewis v. City of Union City* **distinguished**

Another case involving the "convincing mosaic" standard cited by Plaintiff is also distinguishable from the instant matter. *See Lewis v. City of Union City, Georgia*, 934 F. 3d 1169 (11th Cir. 2019). In 2009, Jacqueline Lewis, a black police officer suffered a heart attack. *Id.* at 1173. A month later, she was cleared to return to work without any restrictions. *Id.* Notably, upon her return, her lieutenant said that he assigned "children and women crimes" to the "lady detectives" and gave "the more aggressive stuff" to himself and other male detectives. *Id.*

In 2010, all police officers were required to undergo Taser training. 934 F. 3d at 1174. Concerned that getting Tasered might affect her heart, Lewis' doctor wrote a letter to the police stating Lewis should not be near Tasers. *Id.* The police department then placed Lewis on administrative leave until her doctor released her to return full duty. *Id.* at 1175. Shortly thereafter, Lewis was terminated for being absent without leave. *Id.* at 1176.

The Eleventh Circuit panel held that a "convincing mosaic" may be shown by evidence that demonstrates, among other things: (1) suspicious timing, ambiguous statements, and other bits and pieces from which an inference of discriminatory intent might be drawn; (2) systematically better treatment of similarly situated employees; and (3) that the employer's justification was pretextual. *Id.* at 1185.

The Court found that a jury could infer discriminatory intent because the city's actions in firing Lewis were arbitrary and possibly pretextual. *Id.* at 1186. The department had placed her on indefinite leave with no deadlines, and then fired her for being absent without leave without any warning, which made no sense. *Id.* Crucially, the Court also highlighted that Lewis' lieutenant's statements regarding "lady detectives" suggested "unequal treatment of women on the basis of gender." *Id.* at 1188.

13

The instant case is easily distinguishable from *Lewis*. First, the FDJJ's termination of the Plaintiff was not arbitrary or pretextual. The Plaintiff was fired for the turmoil that occurred at her facility on November 15, where fifteen (15) codes were called within a 24-hour period. The firing took place about one month after the events of November 15, so there is nothing suspicious about the timing of the termination. Importantly, there was also no evidence of a supervisor making any inappropriate comments based on race or sex to the Plaintiff. The Plaintiff offered no evidence of the pieces of a "convincing mosaic".

### c. *Jenkins v. Nell* distinguished

The Plaintiff cites one other case concerning the "convincing mosaic" standard, which is also completely distinguishable from the case at bar. *See Jenkins v. Nell*, 26 F. 4th 1243 (11th Cir. 2022). In *Jenkins*, a white employee asked his black supervisor for a weekend off, which the supervisor denied. Id. at 1246-1247. When the employee made an appointment with human resources to discuss the matter, the supervisor confronted him, and a heated argument ensued. *Id.* at 1247. The supervisor went to HR first and said the employee had threatened him. *Id.* The employee was fired without being able to provide his side of the story to HR. *Id.*

The evidence showed that the supervisor had a history of making racial comments about his white employees, and that a large number of white employees

14

had quit their jobs working under him. *Id.* at 1248. The Eleventh Circuit held that the employee had established a "mosaic" that revolved around the testimony of other white employees who said the black supervisor had mistreated them. *Id.* at 1251. Also, the court pointed out that the supervisor's racially-based comments were the basis of an inference of discrimination. *Id.*

Unlike *Lewis*, the Plaintiff has not established any kind of mosaic showing intentional race or sex discrimination against her. There was no evidence that other female or black employees had been fired or left due to discrimination coming directly from Plaintiff's supervisor. Furthermore, there was absolutely no evidence that Plaintiff's supervisor, or anyone else at the FDJJ, made racially-based comments to or about the Plaintiff or any other person. The evidence in this case fell far short of presenting a "convincing mosaic".

## II. PLAINTIFF FAILED TO PROPERLY PLEAD OR PROVE A §1981 CLAIM

The Plaintiff's failure to offer any evidence of any intentional race or sex discrimination at trial is dispositive of any claims Plaintiff brought concerning intentional discrimination in the trial court. This includes not only her Title VII claims, but also any possible claims of discrimination under §1981. As such, the FDJJ's arguments *supra* preclude any further inquiry into Plaintiff's case. That

being said, Defendant will nevertheless address a matter raised by Plaintiff in her Answer Brief concerning an alleged §1981 claim.

As stated in its Initial Brief, the trial court erred in allowing Plaintiff to argue a §1981 claim, as the Plaintiff failed to stylistically or substantively plead a cause of action for §1981 in her Complaint.  In her Answer Brief, the Plaintiff states that under Fed. R. Civ. P. 15(b), such amendments should be freely allowed.  In support of her assertion, she cites an allegedly analogous Eighth Circuit case, *Kim v. Nasa Finch Co.*, 123 F. 3d 1046 (8th Cir. 1997), which Plaintiff describes as "involving a claim originally brought Title VII [sic] and request to amend to include claim on §1981 with court acknowledging that the evidence relevant to the claims was the same." [AB, 32]  The problem is that is an incomplete portrayal of the *Kim* case.

*Kim* involves a situation where a Korean employee of a retail food distributor believed he was discriminated by his employer by being passed over for promotion and being retaliated against for filing an employment discrimination charge with the EEOC. *Kim*, 123 F. 3d at 1052.  As such, the plaintiff filed a three-count complaint against his employer. *Id.*  Count I alleged unlawful discrimination under Title VII for the failure to promote. *Id.*  ***Count II alleged a violation of § 1981 alleging unlawful discrimination for not being promoted.*** *Id.* (emphasis added.)  Count III

16

alleged a Title VII claim for unlawful retaliation. *Id.* When the case went to trial, the jury instructions did not mention §1981. *Id.* at 1054.

The jury found for Kim at trial, but the trial court applied the Title VII cap on damages. *Id.* Kim made a motion to amend his pleadings to conform to the evidence, arguing Title VII cap should not apply, as he had pled §1981 in his complaint with regard to the failure to promote and that §1981 also applied to his unlawful retaliation claim. *Id.* His motion was denied, and Kim appealed. *Id.*

The Eighth Circuit did note that the same evidence relevant to §1981 was relevant to Title VII. *Id.* at 1063. However, it also stated that an amendment to the pleadings cannot be made at such a late date, "unless the defendant knew of the plaintiff's intent to inject the unpled issues." *Id.* The court then examined the Complaint and saw that it expressly alleged that the employer's conduct had violated both Title VII and §1981. *Id.* at 1063-1064. Crucially, it noted that Count II was a count for §1981 relating to the failure to promote. *Id.* As such, the court held that those allegations were sufficient to put the employer on notice of Kim's claim that the employer violated 1981, so the employer could not claim surprise.

The *Kim* case is entirely distinguishable from the instant matter. As mentioned previously, the Plaintiff's Complaint contains no count for a violation of §1981 and does not stylistically or substantively plead a cause of action for §1981.

17

Section 1981 is also not mentioned as a cause of action in the Pretrial Stipulation. Regardless of some overlap between §1981 and Title VII, Defendant's lack of prior knowledge of Plaintiff's intent to seek a claim for violation of §1981 precluded the trial court from allowing a §1981 claim to be heard by the jury.

Additionally, Plaintiff's Answer Brief fails to address a major point – namely, that the Plaintiff failed to provide *any* evidence showing intentional discrimination against Plaintiff based upon race, which does not meet the "but for" causation required to find §1981 liability. At the end of the trial, the only "proof" of intentional discrimination that the Plaintiff produced was the Plaintiff's lone statement that she felt she was intentionally discriminated against due to her "race and gender." [TT. 5, p. 29-30] As discussed *supra*, the only evidence in this entire lawsuit that even remotely relates to race was a comment made by a juvenile to Ms. Wolf, which she repeated at a quality control meeting. That single incident was clearly not evidence of intentional race discrimination against the Plaintiff based upon her race or sex, and there was certainly no causal link between that misconstrued comment and Plaintiff's termination by the FDJJ. As such, no reasonable jury could have found that "but for" Plaintiff's race, she would not have been terminated.

18

## CONCLUSION

The evidence in the instant case showed that Plaintiff was fired after fifteen (15) codes were called at her facility within a 24-hour period. There was no evidence that race or sex contributed in any way to the FDJJ's decision to fire the Plaintiff and no reasonable jury could have found otherwise. For the foregoing reasons, as well as those set forth in Defendant's Initial Brief, the FDJJ respectfully requests that this Court reverse the trial court's denial of its Rule 50 motion and remand with instructions that judgment should be entered for the FDJJ or, alternatively, that a new trial should be granted.

## CERTIFICATE OF COMPLIANCE WITH FONT STANDARD

We hereby certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure Rule 32(a)(7) in that it contains 4,289 words (including words in footnotes) according to Microsoft 365, the word processing system used to prepare this brief.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the Reply Brief of Appellant was furnished via CM/ECF and via UPS upon the following clerk of court on this ___ day of June, 2022.

19

David J. Smith, Clerk of Court
U.S. Court of Appeals for the 11th Circuit
56 Forsyth St. N.W.
Atlanta, GA 30303

_____

WE HEREBY CERTIFY that a true and correct copy of the foregoing was

filed with the Clerk of Court through the CM/ECF system and served via eservice

upon the following counsel this 3rd day of June, 2022.

**Service List**

Glenn R. Miller, Esq.
Glenn Ricardo Miller, LLC.
67 N.E. 168th Street
North Miami Beach, FL 33162
Email: grmpalaw@gmail.com
Phone Number: 305.651.5991
Counsel for Appellee

Respectfully submitted,

s/Carri S. Leininger
Carri S. Leininger, Esq.
Florida Bar No.:  0861022
Jayme Sellards, Esq.
Florida Bar No.: 60066
Williams, Leininger & Cosby, PA
11300 US Highway One, Suite 300
N. Palm Beach, FL 33408
**Counsel for Appellant**

20